IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RONALD R. ESCOBAR,

    Petitioner,

v.                                                    CASE NO. 1:06-cv-207-MP-AK

JAMES MCDONOUGH,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, petition for writ of habeas corpus, and Doc. 20, amended petition for writ of habeas corpus, by Ronald R. Escobar. Petitioner has paid the filing fee. Respondent has filed a response, Doc. 17, and a supplemental response, Doc. 30. Petitioner has filed a reply. Doc. 40. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the petition be denied.

## BACKGROUND

Petitioner and two co-defendants, Taylor and Ramsey, were charged with five counts of robbery with a firearm and eight counts of kidnaping with a firearm in connection with a robbery at Aaron's Rental-Purchase Store in Alachua County, Florida. The first trial ended in a mistrial, and after the defendants were severed, Petitioner proceeded to trial alone.

The testimony at trial established that on the day in question, Gutenberg, Phillips, Hill, and others were working at the Aaron's store when a white male, identified as Taylor, entered the store and asked Gutenberg about a television which was in the store's clearance room. Gutenberg and Taylor went to the clearance room, where Phillips had been assisting a customer,

and when Gutenberg told Taylor the price was not negotiable, Taylor pulled out a gun and pointed it at the two men. When Gutenberg looked in the back corner of the room, he saw an Hispanic male standing about five to seven feet away who also had a gun and was pointing for the men to get down on the floor. As directed, Gutenberg and Phillips went behind some sofas, and the Hispanic male took their wallets and cell phones. He then bound and duct taped the two men. The other store employees, including Hill, were then brought into the clearance room, where they were duct taped as well.

Later, Gutenberg was untaped and directed to the sales counter to run the store to avoid suspicion from any in-coming customers. Gutenberg testified that he saw the Hispanic male's face four or five times before leaving the clearance room. At the sales counter was the third robber, a black male, identified as Ramsey.

Hill testified that she too saw the Hispanic male while she was in the clearance room. He was four to five feet away from her and exhibited his gun but did not say anything. Hill voluntarily assisted the robbers load electronic equipment and other items onto a cart.

While the merchandise was being loaded, Gutenberg remained at the sales counter with Ramsey. Gutenberg was later taken back to the clearance room where he again observed the Hispanic male. After an hour and a half, the robbers left the store. The employees untaped one another, tripped the alarm, and called police.

Both Hill and Gutenberg picked Petitioner out of police photo line-ups and later identified him at trial as the Hispanic male robber. Petitioner was arrested in Orange County, Florida. When he was interviewed by Gainesville police, he signed a *Miranda* waiver and talked to the officer about his involvement in the robbery. The tape was played for the jury at trial. Off the recorded record, Petitioner told the officer that Taylor had given him the gun to hold briefly during the robbery.

The court granted Petitioner's motion for judgment of acquittal on six counts and allowed the remaining counts to go to the jury, which found him guilty only of one count of armed robber, acquitting him on all remaining charges.

Following a successful Rule 3.800 motion, Petitioner was sentenced to 12 years imprisonment. He then appealed, raising one issue: whether the court erred in denying Petitioner's motion for judgment of acquittal on the remaining count "based on the State's failure to prove the requisite forceful taking charged in the information." The court of appeal affirmed without written opinion. *Escobar v. State*, 888 So.2d 626 (Fla. Dist. Ct. App. 2004).

Petitioner then filed a petition for writ of habeas corpus with the appellate court alleging ineffective assistance of appellate counsel. The court denied the petition on the merits. *Escobar v. State*, 908 So.2d 1132 (Fla. Dist. Ct. App. 2005).

He next filed a Rule 3.850 motion. In that motion, he raised the following claims of ineffective assistance of trial counsel: (1) failure to move to suppress "impermissibly suggestive photo lineups," (2) interference with Petitioner's right to testify, and (3) waiver of Petitioner's presence at critical stages of trial without Petitioner's knowledge or consent. The court denied the motion without evidentiary hearing. Doc. 28, Ex. I. With regard to the photo lineups, the court found that counsel argued the suggestiveness of the lineups to the jury, and that even if they were unduly suggestive (the victims were asked to identify the "Hispanic male" from a photo array which included Petitioner and five African American men), "it is unlikely that [a motion to suppress] would have been granted." *Id*. The court based this finding on Hill's testimony regarding her proximity to the Hispanic male during the robbery and the quality of the lighting, the accuracy of the description of the Hispanic male and the composite sketch made on the night of the robbery, and the testimony of both Hill and Gutenberg that "they had no doubt that [Petitioner] was the suspect in question." *Id*.

As to counsel's alleged interference with Petitioner's right to testify, the court found that Petitioner was questioned on the record regarding his decision not to testify and that he stated he had decided not to testify after discussing the matter with his attorney. The court alternatively found that even if Petitioner had testified, there was a not a reasonable probability "that his proposed testimony would have changed the outcome of the trial." The court based this conclusion on the fact that counsel "brought out at trial each of the points" about which he says he would have testified. *Id*.

Finally, the court rejected Petitioner's claim regarding his absence from the courtroom. It pointed out that the two absences involved legal argument on the motion for judgment of acquittal and at the jury instruction conference. The court found that Petitioner had no constitutional right to attend either of these proceedings, as they involved purely legal matters and were not critical stages of the trial, but that even if he should have been present, he had not shown a reasonable probability that his presence would have changed the outcome of the trial. *Id*.

Petitioner appealed, and the judgment was affirmed without written opinion. *Escobar v. State*, 937 So.2d 125 (Fla. Dist. Ct. App. 2006).

The instant petition ensued. On this occasion, Petitioner raises the following claims: (1) that counsel was ineffective for failing to seek suppression of the lineup, (2) that the court erred in denying the judgment of acquittal on the surviving armed robbery count, (3) that counsel was ineffective for interfering with Petitioner's right to testify, and (4) that counsel was ineffective for "unilaterally waiv[ing]" Petitioner's right to be present at critical stages of the trial. Docs. 1 and 20. Each will be considered in turn.

## **DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state

court adjudication

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is

couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Because most of Petitioner's claims involve counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant

question is not what actually motivated counsel, but what reasonable could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*,

466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

1.     Failure of counsel to seek suppression of photo lineups.

As noted, the state court found this claim to be without merit because even if the lineups were suggestive, it was unlikely that a motion to suppress would have been granted given the circumstances of the identification. Though the court did not cite the applicable law, it is clear that it considered the issue in light of *Neil v. Biggers*, 409 U.S. 188 (1972), which guides a court's decision regarding whether a suggestive out-of-court identification is nonetheless reliable under the totality of the circumstances or whether it created a substantial risk of irreparable misidentification at trial. The five *Biggers* factors are the opportunity to view, the degree of attention, the accuracy of the description, the witness' level of certainty, and the length of time between the crime and the identification. *Id*. at 199. These factors are weighed against the corrupting effect of the suggestive identification, as there is no *per se* rule requiring exclusion of

an identification merely because it was obtained after unduly suggestive procedures. *Manson v. Braithwaite*, 432 U.S. 98, 114-17 (1977).

Having carefully considered the matter, the Court finds that the state court's decision is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Even if the lineups were suggestive, both Hill and Gutenberg testified that the lighting in the clearance room was excellent and that when they first saw the Hispanic male, he was 4-7 feet from them. Gutenberg further testified that by the time all the employees and customers had been taken to the clearance room, he had looked at the Hispanic male four or five times, and in fact, at one point, when the Hispanic male emptied his pockets, he was extremely close to him. Hill testified that she was close enough to the Hispanic male to see his eyes through his sunglasses. Within seven to ten days of the robbery, both Hill and Gutenberg immediately picked Petitioner from a photographic lineup without any hesitation or uncertainty. Doc. 28, Ex. B at 75-76, 78, 83, 94, 133, 140-41, and 212. Furthermore, the court's conclusion that the composite Hill made of the Hispanic male robber was accurate is entirely to a presumption of correctness because Petitioner has failed to show by clear and convincing evidence that this factual conclusion is in error.

This claim is therefore without merit and should be denied.

2. Court erred in denying judgment of acquittal on surviving armed robbery count,.

In this claim, Petitioner claims that the State failed to prove that either "force" or "fear" was used in the course of the robbery, as required by Florida statute. A Fourteenth Amendment challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307,

316 (1979). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319, or phrased slightly differently, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id*. at 320.

Though Petitioner admitted to the officer only that he had briefly held a firearm during the commission of the robbery, testimony from Hill and Gutenberg established that he had a firearm during the entire time of the robbery and was the person charged with making sure that no one did anything stupid. If anyone acted stupid, then he had been instructed to shoot Phillips in the back. Exhibiting a firearm is a show of force and reasonably puts a victim in fear for his or her life. The jury did not leave its common sense at the steps of the courthouse, and it was entitled to draw reasonable inferences from the evidence to support a finding that the elements of the robbery had been proven beyond a reasonable doubt. This claim is without merit.

      3.      Interference with Petitioner's right to testify.

In this claim, Petitioner charges that counsel improperly interfered with his right to testify at trial. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971). "A criminal defendant clearly cannot be compelled to testify by defense counsel who believes it would be in the defendant's best interest to take the stand." *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992).

> The decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance. Nevertheless, the mere fact that such a decision involves trial strategy does not itself mandate that the decision ultimately rests with defense counsel....Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to

      testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.

*Id*. at 1532-33.  One "good tactical reason[ ] why it may not be best for the defendant to testify" is "if the defendant might provide evidence of missing elements of the crime on cross-examination...." *Id*. at 1533 n.9.  The question of whether counsel has violated his client's right to testify is analyzed under *Strickland*.  *Id*. at 1534.

      First, this claim is flatly refuted by Petitioner's on-the-record statements at trial:  During questioning from counsel, Petitioner acknowledged that his attorney had discussed with him his right to testify and that he had decided not to take the stand.  "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Petitioner's allegation that counsel "overbore his will and coerced him" into forfeiting his right to testify is conclusory and is not supported by any specifics.  He stated to the court that he had decided not to take the stand, and there is nothing in his answers which indicate that the court erred in accepting his representations because they were not freely and voluntarily made.

      Furthermore, the court's conclusion that Petitioner failed to establish prejudice is not contrary to or an unreasonable application of *Strickland*.  As the court noted, each of the matters about which Petitioner now says he would have testified was covered by counsel during his examination of the State's witnesses, and there is not a reasonable probability that having Petitioner personally questioned on those matters instead would have changed the outcome of the trial.  The claim is without merit.

    4.      Waiver of Petitioner's presence at critical stages of trial without Petitioner's knowledge or consent.

Finally, Petitioner claims that he was improperly excluded from the argument on the motion for judgment of acquittal and from the instruction charge conference. The court found that neither of these is a critical stage of the proceedings so as to require Petitioner's presence unless waived by him, and thus, counsel did not act ineffectively in proceeding without his presence. Like Respondent, this Court cannot find any Supreme Court precedent even suggesting that either of these stages in a trial is "critical," as that term has been explained by the Court. In this Court's view, neither the charge conference nor the legal argument on a motion for judgment of acquittal represents a stage in the criminal proceedings where Petitioner's right "to a fair and just hearing would be thwarted by his absence." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Even if the Court assumes the contrary, there is absolutely no probability, much less a reasonable probability, that Petitioner's attendance at either of these times would have affected either the outcome of the conference or the motion or the trial itself. Indeed, Petitioner's presence at the charge conference or during argument on the motion, during which legal issues are primarily the focus, would have been "useless, or the benefit but a shadow." *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1934). The claim is therefore without merit.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition and amended petition for writ of habeas corpus, Docs. 1 and 20, be **DENIED,** and this cause be **DISMISSED WITH PREJUDICE**.

    **IN CHAMBERS** at Gainesville, Florida, this  9th    day of June, 2008.

*Case No: 1:06-cv-207-MP-AK*

    S/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**